UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FILED
AUG – 2 2024
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

_____

BONNIE B.,

                 Plaintiff,

      -v-

COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.

_____

22-CV-06047-MJR
DECISION AND ORDER

      Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case.  (Dkt. No. 8)

      Plaintiff Bonnie B.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act (the "Act").  Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.   For the following reasons, Plaintiff's motion (Dkt. No. 6) is granted, and defendant's motion (Dkt. No. 7) is denied.

_____

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

**BACKGROUND**[2]

Plaintiff filed for DIB on January 30, 2020, with an alleged onset date of July 9, 2019. (Administrative Transcript ["Tr."] 15, 179-85).   The application was denied on August 10, 2020, (Tr. 15, 93-104), and on reconsideration on October 16, 2020. (Tr. 107-18).   Plaintiff filed a written request for hearing on October 22, 2020. (Tr. 120-21).   On May 3, 2021, Administrative Law Judge ("ALJ") John P. Costello held a telephone hearing at which Plaintiff appeared and testified, along with her non-attorney representative. (Tr.34-61). A vocational expert also appeared and testified. The ALJ issued an unfavorable decision on May 28, 2021. (Tr.12-33). The Appeals Council ("AC") denied review.  (Tr.1-6).  This case followed.

**DISCUSSION**

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).   "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.    *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B).  The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process."  20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).  First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b).  If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b).  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c).  To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c).  As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.*

§§404.1520(c), 416.920(c).  Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.  *Id.* §§404.1520(d), 416.920(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.   Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  *Id.* §§404.1520(e), 416.920(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations."  *Id.* §§404.1545(a)(1), 416.945(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.   At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  *Id.* §§404.1520(f), 416.920(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.* §§404.1520(f), 416.920(f).  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."   *Id.* §§404.1520(g)(1), 416.920(g)(1).  If the claimant can adjust to other work, he or she is

not disabled.  *Id.* §§404.1520(g)(1), 416.920(g)(1).   If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act.  *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform."  *Carroll*, 705 F.2d at 642.

III.   *The ALJ's Decision*

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 9, 2019, the alleged onset date.  (Tr. 17). At step two, the ALJ found that Plaintiff has the following severe impairments: depressive disorder; generalized anxiety disorder; post-traumatic stress disorder; and asthma.  (Tr. 17-18).   At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 18-20).

Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC and concluded that she can perform

> a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform only simple, routine tasks.  The claimant can only occasionally interact with supervisors, coworkers, and the general public.  The claimant can sustain only occasional exposure to respiratory irritants such as dust, odors, fumes, and extremes in temperature and humidity.

(Tr. 20-27).

At the fourth step, the ALJ found that Plaintiff is unable to perform any past relevant work.  (Tr. 27-28).   At step five, the ALJ found that there are jobs that exist in significant

numbers in the national economy that Plaintiff can perform.  (Tr. 28-29).  Therefore, the ALJ found that Plaintiff has not been under a disability since July 9, 2019, the alleged onset date.  (Tr. 29).

IV.     *Plaintiff's Challenge*

Plaintiff argues that the case must be remanded because the ALJ failed to fully develop the record.  The Court agrees.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Specifically, the ALJ must "investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011). "The ALJ must 'make every reasonable effort' to help the claimant get medical reports from his or her medical sources as long as the claimant has permitted the ALJ to do so." *Sotososa v. Colvin*, No. 15-CV-854-FPG, 2016 WL 6517788, at *3 (W.D.N.Y. Nov. 3, 2016) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)). "The ALJ's duty to develop the record applies to both pro se and represented parties[.]." *Lopez v. Comm'r of Soc. Sec.*, No. 17-CV-1504(KAM), 2018 WL 5634929, at *5 (E.D.N.Y. Oct. 31, 2018). However, the ALJ's duty to develop the record is not limitless. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information...." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks and citation omitted); *Amanda P. v. Comm'r of Soc. Sec.*, 545 F. Supp. 3d 40, 47 (W.D.N.Y. 2021).

This duty exists, in varying degrees, depending upon whether or not the claimant is represented and in what capacity. Here, Plaintiff was represented at the administrative level by a non-attorney representative. (Tr. 15, 92). Courts have held that an ALJ has a heightened duty where a claimant is represented by a non-attorney. *Leutung v. Comm'r of Soc. Sec.*, No. 17-CV-6626-JWF, 2019 WL 1385847, at *3 (W.D.N.Y. Mar. 27, 2019) ("Although plaintiff appeared at the hearing with a representative, that person was not an attorney and thus could not be expected to be a reliable or knowledgeable advocate for plaintiff on either the law or the facts pertaining to plaintiff's disability case."); *Phillips v. Astrue*, No. 6:10-CV-01523, 2011 WL 7049453, at *8 (W.D. La. Nov. 23, 2011), *report and recommendation adopted*, No. 6:10-CV-01523, 2012 WL 135692 (W.D. La. Jan. 13, 2012) ("Representation by a paralegal is not the same as representation by an attorney, and an ALJ has a heightened duty to develop the record when the claimant is represented by a paralegal.").

In this case, Plaintiff treated with Jason Knupp, LCSW-R, for her mental health condition from July 2019 through approximately May 2020. (Tr. 325, 330, 374). It is unclear how often Plaintiff saw Mr. Knupp, but it appears that she was seeing him weekly. (Tr. 332). As Plaintiff's primary therapist, who treated Plaintiff on a weekly basis, Mr. Knupp would have critical insight into the Plaintiff's mental health condition gained over an extended period. Mr. Knupp's treatment records of weekly therapy visits through approximately May 2020 would be helpful and relevant in understanding the nature and severity of Plaintiff's mental condition.

Prior to the hearing, the claimant's non-attorney representative informed the ALJ that Mr. Knupp's treatment records had not been obtained despite the non-attorney's

diligent efforts to obtain them. (Tr. 264). At the hearing, Plaintiff's representative informed the ALJ that he continued to be unable to obtain Mr. Knupp's records, and did not believe Mr. Knupp was willing to provide them. Despite the obvious relevance and importance of these records, the non-attorney representative inexplicably stated at the hearing, "I'm going to say that the record is complete." (Tr. 39). He could have, but did not, request that the ALJ subpoena the records.

An ALJ has discretion in deciding whether to subpoena outstanding records. However, where a record contains obvious gaps that render it incomplete, an ALJ can and should exercise his or her discretion to subpoena the missing evidence. *See Kennedy v. Commissioner*, 2019 U.S. Dist. LEXIS 33093 at \*8, 2019 WL 988889 (W.D.N.Y. 2019)(collecting cases, and observing that "[i]t has been well-established that the decision to issue a subpoena lies within the discretion of the ALJ and is exercised when the record is incomplete*"). Lugene R. v. Kijakazi*, No. 20-CV-1548L, 2022 WL 2834689, at \*2 (W.D.N.Y. July 20, 2022).

By not issuing a subpoena or explaining why he was choosing not to issue one, the ALJ leaves the Court only able to speculate as to why the records were not procured or what information they may have contained. *Kennedy v. Comm'r of Soc. Sec., supra*, at \*3 (W.D.N.Y. Mar. 1, 2019) ("It is simply impossible to conclude with an absolute certainty the degree to which such records address plaintiff's limitations, and whether or not their review would persuade the ALJ to alter his decision regarding plaintiff's disability in general and RFC in particular."); *Shaffer v. Comm'r of Soc. Sec.*, No. 16-CV-874-FPG, 2018 WL 5668511, at \*2 (W.D.N.Y. Nov. 1, 2018) ("Had the ALJ obtained the missing records from Spectrum, it is possible that he would have afforded more weight to NP

Turk's opinion, which was favorable to Plaintiff."); *see also Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review." (internal quotation and citation omitted)).

The record with respect to Plaintiff's mental health treatment is sparse. For the period of December 28, 2019, through January 7, 2021, a period of over a year, there is only one treatment note, that being the note of March 23, 2020. (Tr. 325-326). The entire medical record regarding Plaintiff's mental impairments is less than 100 pages. (Tr. 313-397). In addition, as noted above and by the ALJ, the treatment records for Plaintiff's mental condition contain little probative information relating to her mental functioning, such as treatment notes or psychological testing. Thus, there was an obvious gap in the record and the ALJ was required to subpoena, obtain and consider the outstanding mental health records in the possession of Mr. Knupp. *Amanda P. v. Comm'r of Soc. Sec.*, 545 F. Supp. 3d 40, 48–49 (W.D.N.Y. 2021); *Rosa v. Callahan*, 168 F.3d 72, 79 n.5; *see also Martinez v. Saul*, No. 3:19-cv-01017-TOF, 2020 WL 6440950, at *7 (D. Conn. Nov. 3, 2020) (where administrative record was "not 'extensive' or 'voluminous,' " totaled only 485 pages, with only 123 of those being medical records, concluding that "[w]hat there is of the record reveals that there were several 'obvious gaps' in the medical records that the ALJ had an obligation to fill").

Finally, Plaintiff's missing records are relevant to her mental impairments, and "[t]he duty to develop the record is particularly important where an applicant alleges [s]he is suffering from a mental illness, due to the difficulty in determining whether these individuals will be able to adapt to the demands or stress of the workplace." *Amanda P.*

- 10 -

*v. Comm'r of Soc. Sec.*, 545 F. Supp. 3d 40, 48–49 (W.D.N.Y. 2021) (*quoting Merriman*

*v. Comm'r of Soc. Sec.*, No. 14 Civ. 3510 (PGG/HBP), 2015 WL 5472934, at *19

(S.D.N.Y. Sept. 17, 2015) (quotations, citation, and alteration omitted)).

In sum, given the circumstances in this case, the case must be remanded so that

the ALJ can subpoena, obtain and consider Mr. Knupp's treatment records.[3]


## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No.

6) is granted and defendant's motion for judgment on the pleadings (Dkt. No.7) is denied.

The case is remanded for further administrative proceedings.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      August 1, 2024
            Buffalo, New York


                                                    MICHAEL J. ROEMER
                                                    United States Magistrate Judge

---

[3] Plaintiff also argues that the case must be remanded so that the ALJ can obtain a further medical opinion from Dr. Nilsa Martinez M.D., Plaintiff's treating physician.  The defendant should also consider this argument on remand.